# Wytheville.

## BOLLING v. TEEL ET ALS.

### July 13, 1882.

1. CHANCERY PRACTICE—*Partition.*—Commissioners to make partition, allot land to husband, instead of his wife, whose inheritance it was; and their report is confirmed by the court. No conveyances are directed or made.

HELD:
   1. The husband acquired no title by the proceedings.
   2. Decree of partition does not of itself, operate as a conveyance of title.
   3. The court usually directs the execution of mutual conveyances by the parties, if *sui juris*, and by a commissioner for those *non sui juris*.
   4. Registration of partition, or assignment of dower, does not alter this rule of chancery, but only gives notice of the decree.

2. COPARCENERS.—At common law coparceners could make partition even by parol. No conveyance is necessary. They are seized of their shares by descent from the common ancestor, and partition only adjusts their rights.

   *Quære:* Has the rule been changed by statute?

3. MUTUAL CONVEYANCES are necessary to pass title in all cases where partition can only be made by deed, as between joint tenants.

4. ESTOPPEL.—Where plaintiff and defendant claim title from same source, neither can question its validity.

5. MARRIED WOMAN'S DEED.—Husband and wife sign deed conveying her inheritance in land, but the certificate of her acknowledgment fails to state that "*the deed was explained to the wife.*" The husband died in 1865; the wife in 1870. In ejectment by the wife's heirs to recover the land—

HELD:
   1. The deed was insufficient to pass the wife's interest and her heirs are entitled to recover.
   2. The certificate must show that she knew what she was doing, did it willingly, and does not wish to retract, and substantially comply with the terms of the law in every particular.

6. PENDENTE LITE.—Several plaintiffs after suit brought aliened their interest in the land.

HELD :

Such alienation cannot prevent their recovery for benefit of the alienee. Right to recover at commencement of suit is all required by Code 1873, ch. 131.

7. LIMITATION.—Husband died in 1865 ; ejectment by wife's heirs brought in 1877.

HELD :

The claim of the heirs was not barred.

Writ of error to judgment of circuit court of Floyd county in suit of John L. Teel and other heirs of Amelia Teel, deceased, against Henry Bolling, to recover three hundred and eighty-two acres of land in Floyd. Amelia Teel was a daughter of John Ferguson, deceased, in the partition of whose real estate in 1823, this tract was assigned by the commissioners to her husband, "*Mankin Teel, as legatee.*" The defendant claimed by deed signed by Mankin Teel and Amelia, his wife, to Jacob and John W· Helms, in 1827. In the certificate of the privy examination of Mrs. Teel, the justices failed to state that "*the deed was explained to her.*" Pending the suit several plaintiffs aliened their interests in the land. Mankin Teel died in 1865 ; his wife in 1870. Opinion of the court states the remaining facts. Judgment for plaintiffs, and writ of error awarded defendant.

*John E. Penn,* for the appellant.

1. A substantial conformity to the statute is all that is required in the certificate of a *feme's* acknowledgment. *Hairston* v. *Randolph,* 12 Leigh, 458. In this case the justices say : "We certify that we did examine Amelia Teel privily and apart from her husband, and that she freely and voluntarily acknowledged the indenture hereto annexed, and that she did it without the persuasions or

threats of her said husband, and that she was willing the same should be recorded in the county court of Floyd county." If everything in this certificate be true, it is not reasonable to infer that she did not know what she was doing, and that the deed was not explained. *Tod* v. *Baylor*, 4 Leigh, 537.

2. The record does not show that the *feme* owned the land. Commissioners to make partition allotted this land to "Mankin Teel as legatee." The report was confirmed by the decree of the court. Right or wrong, that decree must stand. It cannot be questioned by appeal, or collaterally. *Baylor* v. *Dejarnette,* 13 Gratt. 162; 2 Phil. on Ev. 60 *et seq.* Martin Teel's deed conveyed a good title to those under whom appellant claims.

3. After ejectment brought, the plaintiffs aliened their interest in the land and the judgment is erroneous under § 28, ch. 131, Code, 1873.

*J. L. Tompkins, Hale & Brown,* for the appellees.

STAPLES, J., delivered the opinion of the court.

This is an action of ejectment brought in the circuit court of Floyd county. The parties having dispensed with a jury, the whole matter of law and evidence was referred to the court.

Upon the trial it appeared that in the year 1823 a suit was instituted in the county court of Franklin for the purpose of partitioning the real estate of John Ferguson, deceased, among his heirs, of whom Amelia, the wife of Mankin Teel, was one. The commissioners, appointed by the court to make the partition, reported that "they had allotted to Mankin Teel, legatee, a tract of 382 acres, lying in Montgomery county," and this report was afterwards confirmed by the court. It would seem, however, that no deeds

of conveyance were executed by any of the parties, nor were any directed or required under the decree of the court. Mankin Teel and wife held possession of the three hundred and eighty-two acre tract until the sale and conveyance, hereafter to be more particularly mentioned.

As has been already stated, the commissioners charged with making the partition allotted the land to Mankin Teel, instead of his wife, whose inheritance it was. This was probably due to the ignorance of the commissioners, and the confirmation of this report was no doubt the result of inadvertence on the part of the court.

It is now claimed that the effect of the decree was to clothe Mankin Teel with the legal title to the land, to the exclusion of his wife, and however erroneous it may be, that decree cannot be successfully assailed in any collateral proceeding. It is a very well settled doctrine of courts of equity that a decree of partition does not of itself operate as a conveyance of the title. Such a decree does not purport to invest the parties with title to their several allotments. Hence it is that the court, in making partition, usually requires that mutual conveyances shall be executed. If any of the parties are laboring under disability, the proper deed is made by a commissioner of the court on their behalf, and such deed under our statute has the same effect in passing the title as if the parties had been competent and had actually executed the same. See 2 Minor's Ins. 424; 2 Daniel's Ch. Practice, 1061, 1161; 1 Barton Ch. Prac. 293–4; Freeman on Cotenancy and Partition, § 427.

The case of *Hurt* v. *Jones and Wife,* 1 Matthews, 341, cited by counsel, is not at all inconsistent with this view. In the opinion delivered by Judge Burks, it is conceded throughout that Hurt, the purchaser, did not acquire under the decree of the court the legal title to his wife's interest in the estate, but a mere equitable right which was sufficient for his protection in an equitable forum, to which

the parties complaining had applied for the adjudication of their rights. That case is in the line of the authorities which hold that a decree for a partition in equity is not of itself sufficient to pass the legal title, but at best confers a mere equitable right. The 15th section of chapter 159, Code of 1873, does not alter this rule of the chancery courts. The object of that section was simply to require the registration of decrees of partition or for the assignment of dower, precisely as is required the registration of other muniments of title.

In neither case does the registration give any new effect or impart any additional force to the decree, deed, or assignment. Its efficacy in passing the title depends upon considerations outside the recording acts; the sole purpose and effect of the registration being to give notice of the instrument or writing when duly recorded, whether the estate transferred be legal or equitable.

To give the decree of partition in this particular case, the construction insisted upon by the defendant's counsel would be to extend its operation and effect farther than is warranted by any just rule of interpretation. In all cases, then, where at common law and under our statutes a voluntary partition *in pais* can only be made by deed (as in case of joint tenants), it would seem that a mere decree of partition will not of itself operate as a conveyance of the legal title to the parties of their several allotments. But in such cases there ought to be mutual conveyances made to pass the legal title.

Looking at the bill and proceedings in the county court, we see that the object was a partition of the real estate of John Ferguson among his heirs, of whom Mrs. Teel was one, and that her husband had no sort of interest in any part of this estate, except as tenant by the curtesy of such portion as should be allotted to his wife. It cannot be supposed that either the commissioners, or the county

court, intended to confer upon the husband a title in fee to his wife's inheritance. What they meant, no doubt, was that the husband should hold the land in right of his wife—that is to say, as tenant by the curtesy—and after his death the inheritance should revert to her as its proper owner. This is the just interpretation of the decree, as read by the bill, the orders, and other proceedings in the county court.

It has been said, however, that if Mankin Teel acquired no title under the decree of the county court, neither did Mrs. Teel; that no conveyances having been executed by her coparceners, Mrs. Teel had the legal title only to one-ninth of the 382-acre tract, and this one-ninth is all her children can recover in the action of ejectment. The answer to this is, that Mankin Teel had no title to or interest in any part of John Ferguson's estate, except as tenant by the curtesy of the part which might be allotted to his wife, and which he might reduce into actual possession. Although entitled to call for a partition in right of his wife, he was not a coparcener of the estate.

His title as tenant by the curtesy was derived from and through his wife. An allotment by commissioners and a decree of confirmation might therefore be a sufficient assignment of her share or portion, and yet be ineffectual to vest him with any title beyond that of tenant by the curtesy. Mrs. Teel was a coparcener, and at common law coparceners could make partition even by parol.

Partition (says a learned author) between coparceners, neither amounts to nor requires an actual conveyance. It is less than a grant. Its operation is not to pass the land by a fresh investiture of the seizin, for parceners are supposed to be already in posssssion of the whole land. Partition therefore makes no degree. It only adjusts the different rights of the parties to the possession. Each does not take her allotment by purchase, but is as much seized

of it by descent from the common ancestor as she was of her undivided share before partition. Allen on Partition, 124–128; 1 Lomax Digest, Vol. 1, 493.

Whether this rule of the common law is now changed and mutual conveyances are necessary under the statutes of frauds and perjuries, is a controverted question. Judge Lomax and Professor Minor concur in the opinion that co-parceners may still make partition by parol without deed. 1 Lomax Digest, 493; 2 Minor's Inst. 438. The special court of appeals, in *Coles* v. *Wooding,* 2 Patton and Heath, 189, laid down the same doctrine. My brethren take the same view. It must be admitted, however, there are many respectable opposing authorities. See Freeman on Cotenancy and Partition, sections 397, 398, 400. This case does not call for any express decision of that question. Here the partition was made more than fifty years ago, and during all the time that has since elapsed, Mrs. Teel and those claiming under her and her husband, have held actual adversary possession of the land without interruption or question by any of the heirs of John Ferguson.

This long period of use and occupation is sufficient to justify the presumption of a conveyance or release of any claim on the part of the other parceners, and the courts and juries in such cases do not hesitate to presume a conveyance or release. *Bryan* v. *Stump,* 8 Gratt. 241.

At all events the defendant, claiming under the title of Mrs. Teel and relying upon it to sustain his defence, cannot be heard to question that title or to invoke an outstanding title in other persons under which he does not claim, and with which he has no connection. Where both parties derive title from the same common source, neither can be heard to question its validity. And so if the grantee assert no other title than that from the common grantor, he will be precluded from denying that his grantor had title which he conveyed. Bigelow on Estoppel, pp. 250–51.

For these reasons we are of opinion that the plaintiffs, as the heirs of Mrs. Teel, have sufficient title to maintain ejectment for the land in controversy.

It further seems to the court that the deed executed in September, 1827, by Mankin Teel and his wife, Amelia. Teel, did not divest the title of the latter to the land in controversy. The certificate of the privy examination and acknowledgment of Mrs. Teel does not state that the deed was fully explained to her, as required by the statute, nor is there anything on the face of it from which it may be fairly inferred it was so explained, or that she had knowlege of the contents. Such an inference cannot fairly be drawn from the fact stated in the certificate that the wife was examined by the justices. The examination may have related only to her signature, or to her free and voluntary execution of the instrument. At all events, the statute requires that the certificate shall not only show that the wife was examined, but, also, that the deed was fully explained to her, or at least that she was apprized of the contents.

It has been argued, however, that the court may infer such knowledge on her part from the fact stated in the certificate, that Mrs. Teel was willing that the deed should be recorded in Montgomery county, where the land was situated. It does not, however, follow that she had ever been told or knew that the deed was a conveyance of her inheritance. *Non constat*, she may have been informed it. was a sale and conveyance of her husband's property, in which she was relinquishing her contingent right of dower, or that it was a mere lease of her land, not affecting her fee simple title. Everything in the certificate may be true, and yet she may have executed the deed with no other knowledge than that which she derived from her husband. She may have neither read the deed nor understood its. contents. The laws relating to conveyances by married

women are founded upon the idea that they may sometimes be coerced by their husbands to do that which they would not willingly do, and, even without such coercion, they may be deceived as to the nature and effect of the act by the representations of their husbands, and therefore it is that the courts of this State have uniformly held that a substantial compliance with the terms of the law must appear on the face of the certificate.

In *Hairston* v. *Randolph*, 12 Leigh, 458, the certificate of the justices was full and complete in every particular, except that, as in this case, it omitted to state that the deed was fully explained to the wife, and it was held by this court that it was invalid as to her. The subject is fully considered by Judge Allen, whose opinion is decisive of this case. It is only necessary to refer to what is there said to find a discussion appropriate in every respect to the present inquiry.

It further seems to the court, that although six of the plaintiffs in the court below may have conveyed their undivided interests in the land in controversy after the commencement of the action and before the trial, such conveyance did not affect their right of recovery against the defendant. The latter is a stranger to that sale; it was not intended for his benefit, and he claims no interest in it.

Any recovery by the plaintiffs so aliening, is for the benefit of the purchaser exclusively. All discussion of this question is, however, rendered unnecessary by the provisions contained in chapter 131, page 958, Code of 1873.

The fourth section of that chapter declares that no person shall bring such action (ejectment) unless he has at the time of commencing it a subsisting interest in the premises claimed and a right to recover the possession thereof, or of some share or interest or portion thereof.

The fourteenth section declares it shall be sufficient to show a right to the possession of the premises at the time of the commencement of the suit.

The object of these sections manifestly was to remove every difficulty growing out of the alienation of property on the part of the plaintiffs pending a long and protracted litigation, whether by mortgage or absolute conveyance, and to refer the right of recovery to the title existing at the commencement of the action.

The twenty-eighth section of the same chapter, presenting the form of the verdict and judgment where the plaintiff's title expires before trial, has no application to the case of an alienation or sale of the property after the commencement of the suit.

When the fee simple owner aliens his estate, his title does not expire in legal contemplation. It is simply a transfer of the title. On the other hand sometimes the title expires by operation of law or by express contract or limitation, as in the case of tenants for years or for life. It was for these and like cases, provision was made in the twenty-eighth section by which the plaintiff, notwithstanding the expiration of his estate, may recover his costs and the defendant go hence without day. It further seems to the court that, as Mankin Teel did not die till the year 1865, and as this action was commenced in 1877, no question of limitation arises in this case. As tenant by the curtesy, he was entitled to the property for life, and the defendant claiming under his deed, was entitled to exercise the same right. The statute of limitation did not however commence to operate until the 1st of January, 1869, and the action being brought within less than ten years from that date, the plaintiff's right of recovery is complete.

This disposes of all the errors assigned. The court is of opinion that none of them being sufficient to reverse, the judgment must be affirmed.

JUDGMENT AFFIRMED.